UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| DOWNEAST VENTURES, LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil No. 05-87-B-W |
| WASHINGTON COUNTY, et al., ) | |
| ) | |
| Defendants. ) | |

## RECOMMENDED DECISION

Downeast Ventures has moved to dismiss counterclaims asserted by defendants Jasper Wyman & Son and SN Commercial, LLC, on the ground that the counterclaims do not fall within the Court's supplemental jurisdiction.  (Docket No. 122.)  Downeast Ventures's complaint alleges that the defendants conspired to violate Downeast Ventures's federal rights and various state law duties owed to Downeast Ventures by wrongfully seizing and retaining various assets under color of state law.  The counterclaims subject to challenge in the pending motion are based on allegations that the assets in question were wrongfully acquired by Downeast Ventures from third parties who are indebted to or liable to the counterclaim plaintiffs by contract or in tort.  Because the counterclaims arise from the same nucleus of operative fact, I recommend that the Court deny the motion to dismiss.

### Supplemental Jurisdiction under 28 U.S.C. § 1367

Pursuant to 28 U.S.C. § 1367(a), generally speaking:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

According to the Supreme Court, § 1367's grant of authority over supplemental claims between parties who are already properly in federal court "should be read broadly, on the assumption that in this context Congress intended to authorize courts to exercise their full Article III power to dispose of an 'entire action before the court [which] comprises but one constitutional "case."'" Exxon Mobil Corp. v. Allapattah Servs., Inc., 125 S. Ct. 2611, 2617 (2005) (quoting Finley v. United States, 490 U.S. 545, 549 (1989)).  This relationship exists "when the federal and nonfederal claims 'derive from a common nucleus of operative fact.'"  Finley, 490 U.S. at 549 (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966)).  When the supplemental claim in issue is asserted in a counterclaim, the Court of Appeals for the First Circuit has held that the counterclaim must be compulsory, not merely permissive, for a district court to exercise supplemental jurisdiction over it, unless there is an independent basis for exercising jurisdiction over the permissive counterclaim.  Iglesias v. Mut. Life Ins. Co., 156 F.3d 237, 241 (1st Cir. 1998).  This holding is based on a distinction that compulsory counterclaims fall under the category of "ancillary jurisdiction" whereas permissive counterclaims do not.  Id. (citing McCaffrey v. Rex Motor Transp., Inc., 672 F.2d 246, 248 (1st Cir. 1982)).  In Allapattah Services the Supreme Court called into question any reliance upon the historical difference between "ancillary" versus "pendent" jurisdiction as a basis for deciding whether to exercise supplemental jurisdiction under § 1367.  Thus, the Court stated:

> The terms of § 1367 do not acknowledge any distinction between pendent jurisdiction and the doctrine of so-called ancillary jurisdiction. Though the doctrines of pendent and ancillary jurisdiction developed separately as a historical matter, the Court has recognized that the doctrines are two species of the same generic problem[.]  Nothing in § 1367 indicates a congressional intent to recognize, preserve, or create some meaningful, substantive distinction between the jurisdictional categories we have historically labeled pendent and ancillary.

Allapattah Servs., 125 S. Ct. at 2621 (internal quotation marks and citation omitted). In any event, assuming the compulsory counterclaim requirement still applies, such a counterclaim is described as one that meets one of the following four tests:

> (1) The issues of fact and law raised in the counterclaim are "largely the same" as those raised in the claim;
>
> (2) Res judicata would bar a subsequent suit on defendant's counterclaim absent the compulsory counterclaim rule;
>
> (3) Substantially the same evidence will support or refute both the plaintiff's claim and the defendant's counterclaim; or
>
> (4) There is a "logical relation" between the claim and the counterclaim.

Iglesias, 156 F.3d at 241. As for a logical relation, it is said to exist when the counterclaim:

> arises out of the same aggregate of operative facts as the original claim in two senses: (1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant.

Id. at 242 (quoting Revere Copper & Brass, Inc. v. Aetna Cas. & Sur. Co., 426 F.2d 709, 715 (5th Cir. 1970)). Under the rationale set forth in Iglesias, it would be error for the Court to exercise supplemental jurisdiction over permissive (i.e., non-compulsory) counterclaims.

Finally, even though power might reside in the Court to exercise supplemental jurisdiction over the defendants' state law counterclaims, whether to exercise that power is a matter of discretion; it is not the counterclaimant's right to join every related counterclaim over which the federal court lacks original jurisdiction. Gibbs, 383 U.S. at 726. Instead, the "justification" for exercising supplemental jurisdiction "lies in considerations of judicial economy [and] convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims." Id. In the words of the statute:

> (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if--
>    (1) the claim raises a novel or complex issue of State law,
>    (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>    (3) the district court has dismissed all claims over which it has original jurisdiction, or
>    (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

### The Claims and Counterclaims

In my prior recommended decision I described the gravamen of Downeast Ventures's lawsuit as follows:

> Downeast Ventures, Ltd., filed suit against KeyBank National Association, SN Commercial, LLC, Jasper Wyman & Son, Washington County, the Washington County Sheriff's Department, James Ebbert and his employer, the McShane Group, Inc. (the state-appointed receiver of property in a foreclosure action commenced by KeyBank and presently being maintained by SN Commercial against third parties), and Harry Bailey, a private investigator hired by the receiver to assist in the location and acquisition of the bank defendants' collateral. The gravamen of the complaint is that the defendants conspired to violate Downeast Ventures's federal rights and various state law duties owed to Downeast Ventures, by wrongfully seizing under color of state law and refusing to return certain assets allegedly owned by Downeast Ventures and not reasonably subject to a possessory interest in the receiver.

That recommended decision addressed a battery of motions to dismiss the lawsuit for failure to state a claim or to abstain from exercising jurisdiction until state court foreclosure litigation commenced by KeyBank and now being maintained by SN Commercial against Guptill Farms and William and Carol Guptill could run its course. The relationship between Guptill Farms and Downeast Ventures is that Guptill Farms is owned 100% by William Guptill Sr. and Downeast Ventures is owned by his wife, Carol Guptill, and their two sons. The relationship Guptill Farms has to this litigation is that it was in a business relationship with Jasper Wyman based on which KeyBank loaned Guptill Farms $2.5 million dollars. Jasper Wyman guaranteed the loan. In

4

addition, the loan was secured by Guptill Farms assets and also by pledges of collateral from William Guptill Sr. and Carol Guptill.  When the business relationship between Jasper Wyman and Guptill Farms fell apart, KeyBank accelerated the loan, Guptill Farms was declared in default, KeyBank instituted foreclosure proceedings and a court-appointed receiver started seizing collateral (SN Commercial now holds the loan and has been substituted for KeyBank in the foreclosure proceeding).  The destruction of the business relationship between Guptill Farms and Jasper Wyman occurred when Jasper Wyman complained to law enforcement that Guptill Farms stole $300,000 worth of blueberries owned by Jasper Wyman, something that Guptill Farms denies.  Downeast Ventures claims in this litigation that the banks, Jasper Wyman, the Sheriff, and the Receiver have all conspired in the wake of the false allegations of theft to use the foreclosure proceeding as a vehicle to destroy Downeast Ventures by wrongfully seizing its business equipment as though it was collateral for the loan in order to, among other things, exact retribution against the Guptills for a theft that never happened.  According to Downeast Ventures, the defendants in this action wrongfully took possession of numerous assets (mostly articles of equipment) that were owned by Downeast Ventures and necessary to its continued operation, as though those assets were subject to collateral assignments in connection with the $2.5 million dollar loan.  The claims currently being pursued by Downeast Ventures are a § 1983 claim alleging unreasonable seizures (a Fourth Amendment claim), as well as state law claims for conversion, wrongful possession, interference with chattels, interference with business relationships and prospective economic advantage, abuse of process and a Maine Civil Rights Act claim that mirrors the § 1983 claim.  A more comprehensive discussion of the allegations that these claims depend on can be found in the prior recommended decision, docket number 77,

reported at 2006 WL 377976, 2005 U.S. Dist. Lexis 32649 (Dec. 12, 2005) (aff'd over objection).

In response to these allegations Jasper Wyman and SN Commercial have filed counterclaims. SN Commercial's counterclaims are styled as follows:

1. Fraudulent transfer per 14 M.R.S.A. § 3575(A) & (B) or § 3576(1);
2. Fraudulent transfer per 14 M.R.S.A. § 3576(2); and
3. Unjust enrichment.

(SN Commercial's Answer and Counterclaim, Docket No. 103.) The gravamen of SN Commercial's counterclaim is that Guptill Farms and the Guptills unlawfully transferred numerous items of collateral to Downeast Ventures in order to avoid an obligation to surrender them as collateral for the $2.5 million loan and unlawfully transferred Guptill Farms accounts receivable and certain litigation proceeds to Downeast Ventures to divert income away from the defaulted Guptill Farms, all without receiving any consideration in return. (Id. ¶¶ 14-17.)

As for Jasper Wyman, it asserts the following counterclaims:

1. Conversion;
2. Conspiracy;
3. Aiding and abetting;
4. Fraudulent transfer per 14 M.R.S.A. § 3575 or § 3576(1); and
5. Fraudulent transfer per 14 M.R.S.A. § 3576(2).

(Jasper Wyman's Answer & Counterclaim, Docket No. 102.) The underlying allegations assert that Jasper Wyman, as guarantor of the loan, was also a creditor of Guptill Farms and that Downeast Ventures was "a pivotal part of the Guptills' scheme to hinder, delay and defraud Wyman" by using Downeast Ventures "to sell blueberries actually processed by Guptill Farms;

6

to sell blueberries owned by Wyman and stolen from the Guptill Farms storage facility; and to improperly shield certain litigation settlement proceeds and other assets pledged as collateral for a loan guaranteed by Wyman."  (Id. ¶ 6.)  Jasper Wyman's counterclaims expand upon those of SN Commercial only insofar as they depend, in part, on the facts and circumstances surrounding the alleged conversion of blueberries, the event (or non-event) which basically kicks off the entire nefarious plot sequence described in the pleadings of Downeast Ventures, Jasper Wyman and SN Commercial, alike, albeit with the protagonist and antagonist roles reversed.

## Discussion

Downeast Ventures argues that the counterclaims must be dismissed because they do not arise out of the same Article III case or controversy as its § 1983 claim because they depend on events that precede any of the allegedly unconstitutional seizures of Downeast Ventures's assets and involve alleged transactions with other parties.  (Pl.'s Mot. to Dismiss Counterclaims at 4-6.)  Downeast Ventures places particular emphasis on the counterclaims pertaining to any alleged conversion of blueberries or unlawful transfer of proceeds from either blueberry sales or the previous, unrelated litigation.  (Id. at 5.)  Less emphasis is given to those counterclaims pertaining to the alleged fraudulent transfer of loan collateral from Guptill Farms or the Guptills to Downeast Ventures, although it is asserted that they are not alleged with sufficient particularity, which is a matter unrelated to whether the counterclaims satisfy the supplemental jurisdiction standard of § 1367.  I conclude that the counterclaims alleging fraudulent transfers of loan collateral clearly "derive from a common nucleus of operative fact."  United Mine Workers v. Gibbs, 383 U.S. at 725.  In order to support its claims Downeast Ventures must demonstrate, among other things, a possessory right in assets seized and withheld by the defendants and that they were not collateral for the Guptill Farms loan, contrary to the defendants' assertions.  This

7

same core factual dispute lies at the heart of the counterclaims that allege a fraudulent transfer of collateral in order to avoid creditors.

I also conclude that Jasper Wyman's counterclaims concerning blueberry conversion and the diversion of litigation proceeds have a logical connection to the claims alleged by Downeast Ventures. In the first place, there is a question whether these proceeds were themselves collateral for the loan. Secondly, although these acts predate the alleged unlawful seizure of Downeast Ventures's assets, all of the alleged acts post-date the $2.5 million loan that is essential background to this litigation. Although Downeast Ventures was not party to that loan, there is a familial relationship between the principals of Downeast Ventures and Guptill Farms and Guptill Farms's alleged default is the event from which all of the acts of the Receiver flowed. Moreover, Downeast Ventures's amended complaint points to the circumstances surrounding the severing of business relationships by Jasper Wyman and the assertion of default by KeyBank as demonstrating bad faith or animus on the part of Jasper Wyman and KeyBank, which animus Downeast Ventures points to as the source of the defendants' alleged designs to ruin Downeast Ventures to exact retribution upon the Guptills. Based on the amended complaint, Downeast Ventures appears to have intended as part of its case to show that Jasper Wyman's allegation of blueberry conversion was false. In this light, it can only be anticipated that Jasper Wyman would introduce evidence to the contrary in its defense. With such facts already on the table, the logical relation of the counterclaims does not appear so attenuated as Downeast Ventures argues.[1] Furthermore, because proof of Downeast Ventures's Fourth Amendment claim turns on the

---

[1] Downeast Ventures also argues that Jasper Wyman cannot pursue a claim related to the alleged conversion of blueberries because it has already received insurance proceeds to compensate for that loss and therefore lacks standing to pursue such a claim. (Pl.'s Mot. to Dismiss Counterclaims at 5-6.) That assertion does not directly influence the supplemental jurisdiction analysis, in my view. If the claims are not legally viable because an insurance company is an essential party that has not been joined in this litigation, then Downeast Ventures should address that matter in a substantive motion that targets the issue. Unlike the present motion, which does not require the presentation of supporting evidence, the Court would require some evidence in support of a motion that Jasper Wyman lacked standing due to the receipt of insurance proceeds.

reasonableness of the Receiver's acts, evidence of the unlawful diversion of blueberries, blueberry receivables or litigation proceeds from Guptill Farms to Downeast Ventures prior to or around the time of the declaration of default might have some tendency to support certain inferences with regard to any ambiguities in the record concerning which of the Guptill entities actually holds title to the articles of equipment that Downeast Ventures claims were wrongfully seized.  Based on these factual entanglements, which largely arise as a consequence of Downeast Ventures's allegations of a wide-ranging conspiracy fueled at the outset by Jasper Wyman's alleged desire to exact retribution against the Guptills based on its own false dealings with Guptill Farms, I conclude "that the same aggregate of operative facts" provide the basis for both Downeast Ventures's claims and Jasper Wyman's additional counterclaims.  Iglesias, 156 F.3d at 242.

      Having concluded that the counterclaims lie within the outer boundaries of supplemental jurisdiction, the question remains whether it would be in the interest of judicial economy, convenience and fairness to expand the litigation to the full extent that the counterclaims would require.  In my view, the counterclaims relating to fraudulent transfer or conversion of loan collateral are so tied up with the unreasonable seizure claims that supplemental jurisdiction should be exercised over them.  The counterclaims that could most fairly be excised from this litigation concern counts I though III of Jasper Wyman's counterclaim, which all seek damages based on Downeast Ventures's alleged part in the conversion of $300,000 worth of blueberries.  Indeed, Jasper Wyman acknowledges that the Court might reasonably decline to exercise supplemental jurisdiction over the blueberry conversion claims.  (Jasper Wyman's Objection at 7 n.4, Docket No. 123.)  Nevertheless, the parties have not mentioned the existence of any pending state court litigation that addresses this matter and in which Downeast Ventures is a party.  Thus,

comity is not a significant concern.  In addition, the claims do not appear to raise novel or complex legal issues and should not predominate over Downeast Ventures's unreasonable seizure claim.  On balance, I find it fair to require Downeast Ventures to defend such a counterclaim in consideration of its own allegations that Jasper Wyman made false accusations in regard to the same and that the dispute over the matter is the fount from which Jasper Wyman's alleged malice and conspiratorial designs flow.  The matter appears relatively well targeted for purposes of discovery and is also probative of underlying issues raised by Downeast Ventures concerning the defendants' motives and designs.

## Conclusion

For the reasons stated above I **RECOMMEND** that the Court **DENY** Downeast Ventures's Motion to Dismiss the Counterclaims of SN Commercial and Jasper Wyman (Docket No. 122).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

Dated:  June 19, 2006