UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DOWNEAST VENTURES, LTD. | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) CV-05-87-B-W |
| v. | ) |
| | ) |
| WASHINGTON COUNTY, et al. | ) |
| | ) |
| | ) |
| Defendants. | ) |

**ORDER ON DEFENDANTS' MOTIONS IN LIMINE
AND PLAINTIFF'S MOTION FOR LATE DESIGNATION OF EXPERT**

Asserting that a corporate employee is not qualified absent expert designation to testify to the value of corporate property, the Defendants have moved in limine to prevent Downeast Ventures, Ltd. (Downeast) from introducing lay testimony about the value of its property, since Downeast failed to designate a valuation expert. In turn, Downeast filed a motion for late designation of an additional expert witness to name a corporate employee as a valuation expert. Concluding that, if a sufficient foundation has been established, FED. R. EVID. 701 allows a corporate employee to render a lay opinion as to the value of corporate property, this Court denies Defendants' motions in limine. Further, concluding that Plaintiff's late designation of expert witnesses is harmless under FED. R. CIV. P. 37(c)(1), and that any prejudice can be mitigated, this Court grants Plaintiff's motion for late designation of expert (Docket # 140).

### I.     Procedural History

On June 16, 2005, Downeast filed suit against Washington County, KeyBank National Association (KeyBank), SN Commercial LLC, Jasper Wyman & Son, the Washington County Sheriff's Department, the McShane Group, Inc., and Harry Bailey, alleging generally that they conspired to violate Downeast's rights under federal and state law by wrongfully seizing certain of its assets not subject to a KeyBank security interest. *Compl.* ¶ 35 at 12 (Docket # 1).  According to Downeast, a construction company, the unlawfully seized assets include pieces of heavy equipment, such as a bulldozer, dump truck, and front-end loader. *Id*. ¶¶ 39-40.  Downeast claims that, in addition to losing the property, the unlawful seizure caused the termination of its business, resulting in losses both in profits and in the value of the business.  *Id.* ¶ 73.

On April 24, 2006, this Court issued an amended scheduling order.  *See Amended Sch. Or.* (Docket # 121).  Pursuant to the order, Downeast was required to make expert disclosures by June 15, 2006; the Defendants' deadline was August 15, 2006.  *Id.* at 3-4. In addition, the order imposed a discovery deadline of November 15, 2006, and required that motions to challenge expert witnesses under *Daubert* and *Kumho* be made by December 15, 2006.  *Id.* at 4.  Finally, the order set an expected trial date of March 6, 2007.  *Id.* at 5.   KeyBank filed its motion in limine on July 20, 2006, *Mot. in Limine of KeyBank Nat'l Ass'n to Preclude Evidence of Property Value* (Docket # 133) (*Def.'s Mot.*), and it was sequentially joined by the other Defendants. *See Mot. in Limine of Washington County, Washington County Sheriff's Department, Joseph Tibbetts, and Lester Seeley* (Docket # 142); *Mot. in Limine of James C. Ebbert and McShane Group, Inc.* (Docket # 144); *Mot. in Limine of Defendant Harry Bailey* (Docket # 148); *Mot. in*

*Limine to Exclude Evidence of Jasper Wyman & Son* (Docket # 150); *Mot. in Limine to Exclude Evidence of SN Commercial, LLC* (Docket # 152). On August 14, 2006, the Plaintiff moved for leave to designate an additional expert witness, William Guptill, Sr.,[1] the manager of Downeast's operations, as its valuation expert. *Pl.'s Mot. for Leave to Designate an Additional Expert Witness* (Docket # 140) (*Pl.'s Mot.*).

## II. Discussion

### a. Motion in Limine

Defendants seek to prevent Downeast from offering testimony as to the value of the seized equipment because Downeast failed to designate a valuation expert. Citing Maine law,[2] they argue that the value of the seized equipment is not a matter of "common knowledge," that expert testimony is "clearly needed," and that a corporate employee is not qualified to testify as to the value of corporate property absent expert designation. *Def.'s Mot.* at 2. In *DiPietro v. Boynton*, the Maine Supreme Judicial Court observed that, although there is a presumption that a property owner is qualified to give an opinion

---

[1] Downeast is a closely held corporation owned by Kurt Guptill (25%), William Guptill, Jr. (25%), and Carol Guptill (50%). *See Compl.* ¶ 1. Carol Guptill is the president and Kurt, William, Jr., and William, Sr. work for the company. *Id.*

[2] Under Maine law, "an owner of real estate is competent to express her opinion of the property's value." *Kleinschmidt v. Morrow*, 642 A.2d 161, 164 (Me. 1994) (citing *Dehahn v. Innes*, 356 A.2d 711, 722 (Me. 1976)). With respect to personal property, "an owner of a chattel, by reason of that owner relationship alone, [is] competent to express his opinion of the chattel's value." *Simmons v. State*, 234 A.2d 330, 332 (Me. 1967). It is true that in *DiPietro*, the Maine Supreme Judicial Court distinguished between individual and corporate owners. *DiPietro v. Boynton*, 628 A.2d 1019, 1024 (Me. 1993). *DiPietro* cites *M.A. Realty*, a Maryland case, which holds that the presumption that the personal owners of property may testify as to value "does not extend to the officers or stockholders of a corporation, *unless the officer or stockholder is shown to have knowledge which in fact qualifies him to testify as to the value of the property which his corporation holds.*" *M.A. Realty Co. v. State Rds. Comm'n of Md.*, 233 A.2d 793, 795 (Md. 1967) (emphasis supplied). This rule, elsewhere characterized as the "majority rule," requires the designated corporate witness to qualify as an expert in order to testify as to the value of corporate property. *Mobil Oil Corp. v. City of Wichita Falls*, 489 S.W.2d 148, 150 (Tex. Civ. App. 1972); *but see State ex. rel. Smith v. Livingston Limestone Co.*, 547 S.W.2d 942, 943-44 (Tenn. 1977). In *DiPietro*, the Supreme Judicial Court noted that the corporation did not actually own the land; it "merely rented it." 628 A.2d at 1024. It remains to be seen whether the Supreme Judicial Court would apply *DiPietro* with equal vigor to a corporate officer, who by virtue of his employment clearly had knowledge of the value of corporate property, but had not been designated as an expert.

3

as to the value of his property, there is a "distinction . . . between the applicability of the presumption to personal as opposed to corporate owners of land."  628 A.2d 1019, 1024 (Me. 1993).  Defendants urge that this distinction requires the Plaintiff to designate as an expert any corporate employee who is proffered to give evidence as to the value of corporate property.

The first flaw in Defendants' argument, however, is that this Court applies federal, not Maine, evidentiary law.  FED. R. EVID. 101, 1101(b).  Even though Downeast has made both federal and state law claims, the Federal Rules of Evidence control.[3]  *Krolikowski v. Univ. of Mass.*, 150 F. Supp. 2d 246, 248 (D. Mass. 2001) ("In a federal question case where the court is also hearing state law claims pursuant to supplemental jurisdiction, federal privilege law governs the claims in the action."); *Fitzgerald v. Expressway Sewerage Constr., Inc.*, 177 F.3d 71, 74 (1st Cir. 1999) ("It is equally axiomatic, however, that federal evidentiary rules govern in diversity cases.").

Under the Federal Rules of Evidence, the primary limitation on the valuation testimony of a corporate employee is foundational; Rule 701 permits a witness to testify to his opinion to the extent it is "rationally based" on his perceptions, helpful to a clear understanding of the determination of facts in issue, and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  FED. R. EVID. 701.  The latter portion of the rule was added in a 2000 amendment to make clear that, if an opinion is based on such knowledge, it must meet the reliability requirements in Rule

---

[3] This general statement has limits.  One exception is where the state evidentiary rule is "one of those rare evidentiary rules which is so bound up with state substantive law that federal courts…should accord it the same treatment as state courts in order to give full effect to [state] substantive policy."  *Conway v. Chemical Leaman Tank Lines, Inc.*, 540 F.2d 837, 838 (5th Cir. 1976); *see also Pasternak v. Achorn*, 680 F. Supp. 447, 448 (D. Me. 1988).  The Court is unaware of any significant state substantive policies implicated in this evidentiary issue.  *Cf. Morton v. Brockman*, 184 F.R.D. 211, 212-14 (D. Me. 1999).

702. The amendments to Rule 701 were designed to prevent the proponent of the witness from "proffering an expert in lay witness clothing." *See* FED. R. EVID. 701 advisory committee notes. Defendants' motion raises the obverse question: whether, in an effort to prevent his testimony, the Defendants are attempting to dress a lay witness in expert clothing. *See Falconer v. Penn Mar., Inc.*, 421 F. Supp. 2d 190, 208 (D. Me. 2006).

It is not always easy to draw a clear distinction between lay and expert testimony. *United States v. Ayala-Pizarro*, 407 F.3d 25, 28 (1st Cir. 2005); *Falconer,* 421 F. Supp. 2d at 208. By way of illustration, however, the advisory committee has offered a pertinent example:

> [M]ost courts have permitted the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert . . . . Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the *particularized knowledge that the witness has by virtue of his or her position in the business*. The amendment does not purport to change this analysis.

FED. R. EVID. 701 advisory committee notes (emphasis added). The First Circuit recently noted that Rule 701 is "meant to admit testimony based on the lay expertise a witness personally acquires through experience, often on the job." *United States v. Mahar*, 454 F.3d 13, 24 (1st Cir. 2006); *see also Texas A & M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 403 (5th Cir. 2003) ("Indeed, an officer or employee of a corporation may testify to industry practices and pricing without qualifying as an expert."); *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, 320 F.3d 1213, 1223 (11th Cir. 2003) (affirming a decision of the district court to allow officers and employees of plaintiff corporation to give lay opinion testimony of the reasonableness of charges and

time to complete repairs, due to their particularized knowledge garnered from years of experience within the field).

Here, Downeast has presented a sufficient foundation for Mr. Guptill's lay opinions to avoid wholesale pre-trial exclusion.  According to the Plaintiff, Mr. Guptill was, within Downeast Ventures, "the principal person involved in buying and dealing in this type of equipment."  *Pl.'s Mot.* at 1.  Mr. Guptill's affidavit states that his father was an international harvester dealer for many years and that Mr. Guptill himself began working in the business at age 12.  *Aff. of William Guptill* ¶ 2 (Docket # 138).  Mr. Guptill states that he has "made it [his] practice" to keep himself apprised of the property values of the corporate equipment by, among other things, reading weekly trade magazines regarding the value of such properties.  *Id.* ¶ 4.  Downeast proposes to call Mr. Guptill to testify about the dates it purchased the equipment, the consideration it paid for the equipment, and the current value of the equipment.  *Id.* Ex. A – J.  Mr. Guptill's proffered testimony appears "based on the lay expertise a witness personally acquires through experience, often on the job," and not on "experience, training, or specialized knowledge" under Rule 702; thus, his testimony would be rationally based on his particularized knowledge relating to his position in the business.  FED. R. EVID. 701 advisory committee notes; *Ayala-Pizarro*, 407 F.3d at 28.  In fact, it would be odd if the person within a construction business responsible for buying and selling construction equipment did not have, by virtue of his position, knowledge of the value of the equipment.

Defendants' motion highlights, however, the need to comply with the spirit as well as the letter of the rules and the danger in failing to do so.  Since the line between

6

lay and expert testimony is sometimes blurry and since the same witness may be qualified to give both, *Ayala-Pizarro*, 407 F.3d at 28, prudent counsel will designate such a witness as an expert to avoid the accusation that he has proffered "an expert in lay witness clothing." FED. R. EVID. 701 advisory committee notes. If the proponent of the testimony fails to designate, the party can anticipate that the court will monitor and may restrict the contours of his testimony at trial.

This is because the court is aware that the failure to designate may have "thwarted the reason for [Rule 26] and materially prejudiced [the opposing party] in its efforts to present its case." *Ferrara & Dimercurio v. St. Paul Mercury*, 240 F.3d 1, 10 (1st Cir. 2001). The Rule and the Scheduling Order are designed to place the opposing party on fair notice: once the expert's qualifications and the bases for his opinion are disclosed, the opposing party possesses the necessary knowledge to consider the potential impact and to decide how to respond – to evaluate whether to engage in further discovery, such as a deposition, to investigate whether the technical and scientific basis for the proposed testimony is sound, and to determine whether to obtain a countervailing expert. *See Santiago-Diaz v. Laboratorio Clinico y de Referencia del Este*, 456 F.3d 272, 2006 U.S. App. LEXIS 20257 (1st Cir. Aug. 8, 2006). If the proponent of the witness fails to comply with expert designation requirements and if the undesignated lay witness begins to stray into areas that should have been designated, the proponent may find that what he failed to disclose to the opposing party will not be disclosed to the jury.

### b. Motion for Leave to Designate Additional Expert

After Defendants' motion in limine, Downeast prudently moved for leave to designate an additional expert witness to add Mr. Guptill as its expert on valuation of the

7

seized property, stating that counsel had "inadvertently failed to designate Mr. Guptill as being the person that would provide the opinions as to those values." *Pl.'s Mot.* at 2. The Scheduling Order set June 15, 2006 as the deadline for expert witness disclosures pursuant to FED. R. CIV. P. 26(a)(2). That rule provides that a party must "disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence," FED. R. CIV. P. 26(a)(2)(A), and this disclosure must be made "at the times and in the sequence directed by the court." FED. R. CIV. P. 26(a)(2)(C).

As Downeast pointed out, Rule 37(c)(1) calls for the imposition of an exclusionary sanction against parties who, "without substantial justification," fail to comply with the discovery rules, unless they are able to show their failure "is harmless." FED. R. CIV. P. 37(c)(1); *see also J.S. McCarthy Co. v. Brausse Diecutting & Converting Equip., Inc.*, 2005 U.S. Dist. LEXIS 7504 at *16 (D. Me. 2005) (finding that a late disclosure of a document did not substantially change the "complexion of the case"). The purpose of the "harmless" provision is "to avoid unduly harsh penalties in a variety of situations." FED. R. CIV. P. 37 advisory committee notes. Some factors considered in this Circuit to evaluate a request for a late designation include: material prejudice, unfair surprise, and the ability of the opposing party to "formulate a response or adequately cross-examine the new expert as to the foundations for his opinion." *Ferrara & Dimercurio*, 240 F.3d at 10. More generally, the Court may consider "the history of the litigation, the proponent's need for the challenged evidence, the justification (if any) for the late disclosure, and the opponent's ability to overcome its adverse effects." *Santiago-*

*Diaz*, 456 F.3d at __, 2006 U.S. App. LEXIS 20257, at *12 (quoting *Macaulay v. Anas*, 321 F.3d 45, 51 (1st Cir. 2003)).

Regardless whether counsel's inadvertence could constitute "substantial justification" under Rule 37(c)(1), this Court concludes that a late designation of Mr. Guptill is harmless.[4] First, the sole prejudice to the Defendants is the lateness of the notice, but any prejudice to the Defendants can be fully mitigated.[5] The discovery deadline is not scheduled to lapse until November 15, 2006 and the date for trial is not until March 6, 2007. Defendants have time to depose Mr. Guptill, if necessary, and to designate any opposing experts. The lack of any material prejudice to the Defendants supports Downeast's motion.[6]

---

[4] This case differs from those where courts in this Circuit have denied a late designation. The First Circuit recently upheld the exclusion of expert testimony when the plaintiff failed to make a complete designation until seven months after the discovery deadline. *Santiago-Diaz*, 456 F.3d at __, 2006 U.S. App. LEXIS 20257 at *15-16. In *Primus v. United States*, the First Circuit upheld a denial of a motion to allow late designation of an additional expert, due in part to the fact that the plaintiff had been granted multiple extensions to complete discovery and expert designations. 389 F.3d 231, 236 (1st Cir. 2004). In *LaPlace-Bayard v. Batlle*, the plaintiffs waited until a week before trial to designate a doctor as an expert witness, and the defendant did not receive the expert report until three days before trial. 295 F.3d 157, 162 (1st Cir. 2002) (also noting that the plaintiffs "chose to postpone the costs associated with retaining an expert in an attempt to increase, in their view, the likelihood of settlement."). In *Peterson v. Scotia Prince Cruises, Ltd.*, the plaintiff sought to designate an expert after the deadline for disclosure had been extended twice. 222 F.R.D. 216, 218 (D. Me. 2004) (excluding, under Rule 37, plaintiff's expert witness due to a "lack of time in which the defendant might overcome the adverse effects," among other factors). In *Roger Edwards, LLC v. Fiddes & Son, Ltd.*, the defendant successfully moved in limine to exclude witnesses not disclosed until the plaintiff filed a pretrial memorandum, after the discovery deadline. 216 F.R.D. 18, 19 (D. Me. 2003).

[5] Defendants have argued that one aspect of the prejudice is that they were required to file the motion in limine and to respond to the motion for late designation. *Obj. of Def. KeyBank National Ass'n to Pl.'s Mot. for Leave to Designate* at 2-3 (Docket # 141) (*Def.'s Obj.*). But, if that were the deciding factor, virtually every late designation would be denied. Defendants also argue that, even if the late designation is harmless under Rule 37(c), Plaintiff would still have to meet the excusable neglect criterion in Rule 6(b). If Defendants' argument were correct, Rule 6(b)'s excusable neglect requirement would swallow Rule 37(c)'s harmlessness inquiry. Instead, Rule 37(c) contemplates that the court evaluate whether there was a substantial justification for the failure to disclose, a criterion similar to excusable neglect, and if there is no substantial justification, the issue becomes harmlessness.

[6] KeyBank's main complaint of prejudice is that its time for designating its own valuation expert will be limited to ten days. *Def.'s Obj.* at 3. The 10-day period came about through KeyBank's own motion. *See Mot. of KeyBank to Modify or Clarify Sch. Or.* at 1 (Docket # 132). Nevertheless, if the Defendants need additional time to complete their designations, this Court will be receptive – within reason – to a motion to extend the time for Defendants to designate their experts and to adjust the remaining deadlines, if necessary.

Second, Defendants have not argued that Mr. Guptill's late designation would cause any unfair surprise. The Defendants must have been aware since the Complaint was filed, if not before, that Downeast was claiming they illegally seized its equipment; it is apparent that, if Downeast succeeded on the underlying claim, the value of the equipment would be a measure of damage.

Third, Defendants are fully capable of responding to Mr. Guptill's opinion and cross-examining him on his qualifications and the foundations for his opinion. The valuation of certain pieces of construction equipment is not a particularly complex area of expert testimony, and Mr. Guptill's opinion does not present a new theory of damages. Unlike *Roger Edwards*, there remains plenty of time until the expiration of the discovery deadline; moreover, the estimated trial date is months away.

None of the more general considerations for a Rule 37(c) sanction is present. There is no history of untoward conduct in the litigation, such as a "persistent flouting of court rules and orders," *Santiago-Diaz*, 456 F.3d at __, 2006 U.S. App. LEXIS 20257 at *5. The Plaintiff has a critical need to present evidence of the value of the equipment it contends was wrongfully seized. Its justification for the non-disclosure was confusion about the need for expert disclosure of a corporate employee valuation witness, a somewhat murky area of law. Finally, as discussed, the Defendants should be able to overcome the adverse effects of the non-disclosure.

### III.    Conclusion

This Court DENIES Defendants' motions in limine (Docket #s 133, 142, 144, 148, 150 and 152), and GRANTS Downeast's motion for leave to designate an additional expert witness (Docket # 140). In accordance with the Order granting the Motion to

Amend the Scheduling Order (Docket # 134), the Defendants' expert designations regarding a valuation expert will be due 10 days from the issuance of this Order, unless further extended.

**SO ORDERED.**

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 7th day of September, 2006